Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 2422 | **DATE** | AUG 28 2000 |
| **CASE TITLE** | Bennett v. Smith | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, the individual defendants' motion for partial summary judgment [ Doc. 115-1] is granted. Bennett's individual capacity claims against Paul Smith, Robert Davis, Marie Slater, David Flemming, Mark Risham, Kenneth Knicker, Elaine Sikorski, and James Travis are hereby dismissed with prejudice.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| ☒ | No notices required, advised in open court. | 3 number of notices | Document Number |
| | No notices required. | | |
| | Notices mailed by judge's staff. | AUG 29 2000 date docketed | 139 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | IS docketing deputy initials | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKE Given out | |
| | Copy to judge/magistrate judge. | in Court -8-28-00 date mailed notice | |
| dc(lc) | courtroom deputy's initials | 00 AUG 28 PM 3:46 Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VALERIE BENNETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 96 C 2422 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| PAUL SMITH, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Valerie Bennett ("Bennett") brings this employment discrimination action against Community Unit School District 200 ("District"), the District Superintendent James Travis ("Travis"), and members of the District's school board Paul Smith, Robert Davis, Marie Slater, David Fleming, Mark Risham, Kenneth Knicker, and Elaine Sikorski. In her Fifth Amended Complaint, Bennett alleges that the defendants unlawfully discriminated against her by failing to hire her for a full time teaching position. Count I sets forth a claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e. In Count II, Bennett asserts claims under 42 U.S.C. §§ 1981 and 1983 ("section 1981" and "section 1983," respectively) based on alleged violations of the equal protection clause of the Fourteenth Amendment of the United States Constitution.

Before this court is defendants Superintendent Travis' and the board members'

-1-

(collectively, "individual defendants") motion for partial summary judgment on all counts directed against them in their individual capacities.[1] For the reasons stated herein, the individual defendants' motion is granted.

## I. Standard of Review

When the party moving for summary judgment establishes that there exists no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law, summary judgment is proper. See Fed. R. Civ. P. 56(c). Summary judgment will be denied, however, where a reasonable jury could return a verdict for the nonmoving party. See Andersen v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must view all facts in a light most favorable to the nonmovant. See id.

The movant bears the burden of establishing that there exists no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Once the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. See id., 477 U.S. at 324, 106 S. Ct. at 2553. Summary judgment will be entered against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552-53.

---

[1] The individual defendants' motion is entitled "Motion for Partial Summary Judgment as to Plaintiff's 'Individual' Capacity Claims under 42 U.S.C. 1981 and 1983." Their memorandum of law, however, urges dismissal of all claims, including the Title VII claim, and the plaintiff had an opportunity to respond thereto. The court will accordingly treat this motion as directed toward all counts of Bennett's Fifth Amended Complaint.

## II. Factual Background

The Community Unit School District 200 is a public school district located in Wheaton, Illinois. Defendant Travis served as the District Superintendent during the relevant period. Defendants Smith, Davis, Slater, Flemming, Mark, Knicker, and Sikorski were members of the District's Board of Education ("Board").

Between 1994 and 1996, the District's hiring procedures were as follows. Teachers interested in employment with the District submitted applications to the Districts' central office. After reviewing applications filed at the central office, the principal of the school with open positions selected candidates to proceed to the interview stage. Building-based interview teams comprised of teachers and administrators conducted interviews with the candidates. With the input of these screening committees, the principal chose the final candidate, who was then recommended to Superintendent Travis. Then the principal's recommendation along with the final candidate's application materials was sent to the Board for approval. Neither Travis nor the Board were informed of the applicants and interviewees considered and rejected for the positions. Each and every candidate recommended by the principal of each school has been approved by the Board.

On or about July 11, 1994, Bennett submitted an application to the district for consideration for full-time teaching positions. Bennett was certified as a Type 03 teacher, which qualified her to teach kindergarten through ninth graders. Bennett was selected by the applicable school principals to interview for five full-time teaching positions at various schools within the District. At each of the five schools, Bennett, who is African-American, interviewed with all-

white screening committees. Bennett was not hired for any of the positions. Instead, the principal of each school recommended for employment other candidates, all of whom were white, to Superintendent Travis. In turn, Travis presented the applicants recommended by the principals to the Board, who approved the candidates. Although Bennett worked as a part-time math and science teacher in the District in 1995, she was never offered a full-time teaching position within the District. She filed the instant suit in August of 1996.

### III. Discussion

Bennett brings this action under Title VII and sections 1981 and 1983. Bennett alleges that she was subject to disparate treatment because of her race. She also sets forth a disparate impact claim based on defendants' creation and utilization of an allegedly discriminatory hiring system. She contends that the individual defendants, acting under color of law, deprived her of equal protection of the law

The individual defendants urge the court to grant partial summary judgment in their favor on all counts. First, the individual defendants argue that Title VII precludes claims against them in their personal capacities. Title VII authorizes actions against "employers." 42 U.S.C. § 2000e-2(a). The statute goes on to define an employer as a "person engaged in an industry affecting commerce . . . who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). Although an employer entity may be held liable for the acts of its agents, an individual in his or her personal capacity does not fall within the scope of Title VII. See Sattar v. Motorola, 138 F.3d 1164, 1168 (7th Cir. 1998) (rejecting individual liability under Title VII); Williams v. Banning, 72 F.3d 552, 555 (7th Cir. 1995); Blumenthal v. Murray, 995 F.

-4-

Supp. 831, 835 (N.D. Ill. 1998). Bennett's Title VII claims, brought under the theories of disparate treatment and disparate impact, are thereby dismissed as against the individual defendants in their non-official capacities.

The individual defendants also seek summary judgment of Bennett's § 1981 and § 1983 claims. It is well settled that individual liability under both § 1981 and § 1983 may be found only where the charged individuals engaged in "personal deliberate wrongdoing." Wilson v. City of Chicago, 6 F.3d 1233, 1241 (7th Cir. 1993) (stating that respondeat superior and negligent supervision do not provide grounds for liability under § 1983). See also Kelly v. Municipal Courts of Marion County, Indiana, 97 F.3d 902, 909 (7th Cir. 1996) (requiring showing of personal involvement or acquiescence to establish § 1983 individual liability); Togba v. County of Cook, 48 F. Supp. 2d 1104, 1112 (N.D. Ill. 1999) (finding no liability under § 1981 where defendant did not personally participate in the decisionmaking process); Behnia v. Shapiro, 961 F. Supp. 1234, 1237 (N.D. Ill. 1997) (§ 1981).

The present record demonstrates that the Superintendent and the individual board members did not actively participate in the decision to reject Bennett for employment. The undisputed facts show that the challenged hiring decisions were committed to the discretion of the school principals with the input of teacher- and administrator-based interview teams. The individual defendants did not know the identity of the candidates who were not selected for employment. Rather, they were presented only with the principals' final recommendation, whom they approved without fail. Clearly, the superintendent and the board members merely rubber-stamped the decisions of each school principal.

In an effort to withstand summary judgment, Bennett attempts to attribute knowledge of

her candidacy upon the defendant board members. Bennett fails to raise a genuine issue of fact for trial, however. First of all, the individual defendants' awareness of her application has not been sufficiently demonstrated. In her affidavit, Bennett asserts that while seeking employment in District 200, she, along with other teachers and administrators of the District, attended a social function at the home of a defendant board member. Bennett also avers that a newspaper article covered her work as a substitute teacher at District 200. In addition, Bennett states that she relayed a copy of her resume to John Ebright, a member of the Board who is not a named defendant, who in turn forwarded her resume to Victoria Taylor, director of the District's Human Resources department. Bennett contends that she met with Taylor, who confirmed that she had been formally contacted by Ebright and informed Bennett that the board made all hiring decisions.[2] Notably, there is no allegation that Bennett herself, the newspaper article, or Ebright or Taylor notified the Board members that Bennett was seeking a full time position. In light of this conspicuously missing link, it is not reasonable to infer that the named defendants were somehow made aware of Bennett's employment search. Moreover, even if the court assumed that the board members were aware of Bennett's job-seeking status, such knowledge does not change the fact that they were not the actual decisionmakers. Thus, the issue, even if disputed, is not material and as such, does not preclude summary judgment.

Bennett also argues that Travis and the Board members are personally liable because they were authorized to enter into employment contracts with teachers. Bennett also insists that the

---

[2] At his deposition, Ebright testified that Bennett's husband had mentioned to him that Bennett had applied for a teaching position with the District. In an effort to aid Bennett, Ebright stated that he had informed Taylor that Bennett had applied for a teaching position.

individual defendants refused to hire her and other non-white candidates because of race. However, these arguments are misguided because they fail to address how the individual defendants actively participated in the decision not to hire Bennett. Therefore, these arguments do not help Bennett withstand partial summary judgment. Lastly,[3] Bennett points out that the defendants did not implement a plan for minority hiring, purportedly in violation of a 1991 deadline set by the Illinois School Code, until after she brought a discrimination charge in August of 1995. The District's failure to implement such a plan in a timely manner, however, is beside the point. Such evidence does not go to show that the defendants discriminated against Bennett because of her race. Furthermore, an alleged violation of a state statute does not establish a predicate violation for purposes of a § 1983 claim.[4]

It is important to note that the individual defendants are not shielded from liability because they worked collectively as a board. Rather, they are not subject to liability because they did not play an active role in the challenged decision. Superintendent Travis and the board members simply deferred to the hiring decision of the principals. Therefore, they cannot be sued in their personal capacity under §§ 1981 and 1983. See Cygnar v. City of Chicago, 865 F.2d 827, 847 (7th Cir. 1989) (no individual liability under § 1983 where official alleged to have indirectly approved challenged decision); Togba, 48 F. Supp. 2d at 1112 (participation in actual

---

[3] Bennett raises additional arguments supported solely by the findings of her experts. In light of the court's previous ruling excluding the use of Bennett's experts, those arguments were not taken into consideration.

[4] To the extent that Bennett relies on the Board's failure to implement a diversity plan as evidence of the unlawfulness of the district's prior hiring practices, such evidence is inadmissible under Federal Rule of Evidence 407 and cannot be relied on to oppose summary judgment. See Fed. R. Evid. 407 (subsequent remedial measures not admissible as evidence of culpability).

decisionmaking process required to establish individual liability under § 1981).

Realizing the weakness of her position, Bennett concedes that a theory of liability based upon the individual defendants' direct participation in the decision to reject plaintiff is not viable. See Pl.'s Resp. at 3-4 ("The Plaintiff's theory of intentional discrimination by the individual defendants under 42 U.S.C. §§ 1981 and 1983 is not based upon the individual board members taking an active role in the employment interviews of the Plaintiff.") Instead, Bennett seeks to establish personal liability by attacking as discriminatory the hiring system created by the individual defendants.[5]

This "policy and custom" claim could succeed if Bennett could demonstrate that the board members or the superintendent personally devised a discriminatory system. See Armstrong v. Squadrito, 152 F.3d 564, 580 (7th Cir. 1998). However, there is no evidence that the hiring system implemented by the board was intended to be discriminatory. The parties do not dispute that the five screening committees that interviewed Bennett were composed of all white teachers and administrators. But Bennett puts forth no evidence suggesting that the Board mandated that all members of the interview team be white. Thus, Bennett fails to establish the crux of her theory, that there existed an "officially sanctioned policy or custom of the Defendants to use all-white screening committees." Pl. Resp. at 4. In any event, Bennett fails to tender

---

[5] Bennett cites to several cases to support her discriminatory policy theory. To the extent that she cites to these authorities for the proposition that individual defendants properly may be named as defendants, she is correct. The cited cases, however, merely establish that individual defendants may be charged in their official capacities, which is merely another form of a claim against the government entity. See Wolfe-Lillie v. Sonquist, 699 F.2d 864, 870 (7th Cir. 1983). The cases do not stand for the proposition that a plaintiff may impose personal liability upon individual defendants without a showing of active involvement in the alleged discriminatory conduct.

evidence which would suggest that the individual defendants intentionally implemented a racially discriminatory system. See Majeske v. Fraternal Order of Police, 94 F.3d 307, 311-12 (7th Cir. 1996) (noting that disparate impact does not satisfy the intent requirement of §§ 1983 and 1981); Melendez v. Illinois Bell Tel. Co., 79 F.3d 661, 669 (7th Cir. 1996) (stating that plaintiff bears the burden of establishing intentional discrimination in § 1981 case). Under the facts of this case, the racial composition of the interview teams alone does not permit the inference that the decisions rendered by those teams were discriminatory. Accordingly, Bennett's claims against the individual defendants are dismissed.

## IV. Conclusion

For the foregoing reasons, the individual defendants' motion for partial summary judgment is granted. Bennett's individual capacity claims against Paul Smith, Robert Davis, Marie Slater, David Flemming, Mark Risham, Kenneth Knicker, Elaine Sikorski, and James Travis are hereby dismissed with prejudice.

Enter:

_____
David H. Coar
United States District Judge

Dated: AUG 2 8 2000