# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 2422 | **DATE** | DECEMBER 15, 2000 |
| **CASE TITLE** | Bennett v. Smith | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated in the attached Memorandum Opinion and Order, the defendants' motion for judgment as a matter of law [Doc. #150-1] is DENIED. The defendants' motion for a new trial [Doc. #150-2] is DENIED in part and GRANTED in part. There will be no new trial, but the defendant's request for a remittitur is granted. Bennett's backpay award is reduced to $29,731.00 and her compensatory award is reduced to $45,000.00. The plaintiff's disparate impact claim is hereby moot.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 18 2000 date docketed | |
| X | Docketing to mail notices. | | | 167 |
| | Mail AO 450 form. | | IS docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| dc(lc) | courtroom deputy's initials | FILED FOR DOCKETING 00 DEC 15 PM 2:36 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION



| | |
|---|---|
| VALERIE BENNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 96 C 2422 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| PAUL SMITH, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Valerie Bennett brought a claim of race discrimination against the Board of Education of Community Unit School District No. 200 and individual board members in their official capacities (collectively, "District 200" or "District"). Although Bennett, an African American, interviewed for six teaching positions at elementary and middle schools throughout the District, she was rejected in favor of white candidates. A jury found for the plaintiff and awarded her backpay and compensatory damages. Defendants move for judgment as a matter of law or in the alternative a new trial. For the reasons discussed below, the defendants' motion is granted in part and denied in part.

### I. Standard of Review

On a motion for judgment as a matter of law, this court reviews whether "the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to

167

support the verdict when viewed in the light most favorable to the party against whom the motion is directed." Mathur v. Bd. of Trustees of S. Illinois Univ., 207 F.3d 938, 941 (7th Cir. 2000). A motion for a new trial, the court considers whether the verdict is against the weight of the evidence. Cygnar v. City of Chicago, 865 F.2d 827, 845 (7th Cir. 1989).

In assessing the defendants' motion for judgment as a matter of law, the court will apply a stringent standard in reviewing the jury's verdict. Christie v. Foremost Insur. Co., 785 F.2d 584, 586 (7th Cir. 1986). If a rational jury could have found for the plaintiff, then the court will uphold the verdict. Mathur, 207 F.3d at 941. The court may "not step in and substitute its view of the contested evidence for the jury's." Id. See also Spelman v. Netzel, No. 93 C 0547, 1995 WL 290392, at *1 ("Care must be taken to avoid supplanting the court's view of the credibility of evidence over the jury's determination of credibility.") Once the plaintiff prevails before a jury, the method of proof is irrelevant. Wichmann v. Bd. of Trustees of S. Ill. Univ., 180 F.3d 791, 800 (7th Cir. 1999), rev'd on other grounds, 120 S. Ct. 929, 145 L.Ed.2d 807 (2000). The court, at this juncture, asks simply whether the jury's verdict could be sustained on the record as a whole. Id.

Intentional discrimination may be inferred when the evidence shows that the employer's proffered reason is unworthy of credence. Essex v. United Parcel Serv., Inc., 111 F.3d 1304, 1310 (7th Cir. 1997). In other words, evidence that calls into question the trustfulness of the employer's proffered explanation permits a jury to conclude that the employer discriminated on a prohibited basis. Perdomo v. Browner, 67 F.3d 140, 145 (7th Cir. 1995) (on summary judgment motion). The court will not lightly overturn a jury's judgment on the credibility of witnesses, especially in an employment discrimination case "where the result frequently turns on sensitive

and difficult factual questions involving motive, thus often making the credibility of the witnesses decisive." Wilson v. AM General Corp., 167 F.3d 1114, 1121 (7th Cir. 1999). See also Spelman, 1995 WL 290392, at *1 (observing that resolving conflicts in testimony and weighing and evaluating evidence is a function of the jury, not of the courts) (citing Bandura v. Orkin Exterminating Co., Inc., 865 F.2d 816, 821 (7th Cir. 1988)).

## II. Discussion

Viewing the evidence in the light most favorable to Bennett, this court finds that there was sufficient evidence to support a verdict for Bennett. The evidence presented was not overwhelmingly in Bennett's favor. It was, however, adequate. Bennett presented evidence which tended to negate the bases for the hiring decisions proffered by the District. In addition, Bennett offered evidence that cast into doubt the credibility of the defendants. In the end, the verdict came down to credibility assessments, and this court will not disturb the jury's determination.

Clearly, Bennett was qualified to teach in District 200. Her application and resume reflected a strong academic record and extensive teaching experience, and she was properly certified. But whether or not Bennett was adequately competent for the position was never at issue. Rather, the defendants claimed that the individuals ultimately hired were more qualified than Bennett. Specifically, the defendants contend that Bennett came up short in comparison to the hired candidates for the following reasons. First, she lacked regular education experience. Second, the hired candidates had more education, experience, and background directly related to

the grade level or subject matter of the position at issue. And lastly, Bennett commanded a greater salary than the other hirees, making her more expensive to hire.

Although Bennett had substantial experience teaching special education,[1] she lacked regular education experience, point out the defendants. Contrary to the defendants' assertion, however, Bennett did teach regular education. Her application stated that she taught both special and regular education on a part-time basis for one year. In the 1994-95 school year, Bennett was a substitute teacher for District 200. In the 1995-96 school year, she was a part-time teacher in the District in non-special education classes. The Hubble Middle School interview form noted that Bennett had taught second grade regular education. Bennett was also certified to teach kindergarten through ninth grade regular education.

Bennett's exposure to the regular education classroom was minimal, to be sure. On the other hand, it was no less extensive than the experience had by some of the hirees. In fact, in some instances, Bennett had more experience teaching regular education than the candidates ultimately selected for the open positions. Three of the six individuals hired for the District 200 positions at issue had only student teaching experience. Cynthia Lenhart, who was offered the fifth grade teacher position at Emerson Elementary School, Rebekah Petrando, who was offered the eighth grade language arts position at Hubble Middle School, and Dominique Rquibi, who was offered the fifth grade teaching position at Weisbrook Elementary School, were all chosen

---

[1] The defendants concede that they did not view Bennett's extensive special education experience as a liability. In fact, Guy Todnem, the principal at Emerson Elementary School, sought candidates with experience in inclusion, which is the mainstreaming of special education children. He accordingly regarded Bennett's experience as a positive factor. Likewise, Rosemary Murphy, principal at Lowell Elementary School, documented that Bennett's special education experience worked in her favor.

over Bennett even though their teaching experience was limited to student teaching. Clearly, at least half of the individuals selected for the open positions had minimal teaching experience. Thus, the District's explanation that Bennett was rejected because she had little regular education experience does not hold water. See Perdomo, 67 F.3d at 146 (plaintiff showed that her credentials rivaled those of chosen candidates).

The defendants also argue that the hired candidates were better qualified than Bennett because they had experiences more directly relevant to the open position. Specifically, the defendants argue, the hirees had either prior experience teaching at the grade level or an academic background related to the subject matter associated with the open position. The defendants' assertion is generally true, although tenuous. For example, the District sought a fifth grade teacher at Emerson Elementary school who could strengthen the reading program. Accordingly, they regarded experience in English as important. Defendants hold out Lenhart, who was ultimately offered the job, as having had a "background" in reading and English as a second language. That was not her major, however, so the court is confused as to what this "background" constitutes. Bennett had a minor in English, which would also appear to qualify as a "background" in English. Yet the defendants regarded Bennett's English background as inferior to Lenhart's. With respect to experience teaching at the relevant grade level, Bennett had taught fifth graders in her previous job in Texas. Lenhart had only taught fourth graders, and that in her capacity as a student-teacher. Lenhart was nevertheless credited with having a "good understanding" of fifth graders, while Bennett's prior experience was disregarded. A reasonable jury could thus reject the defendants' contention that the hired candidates were chosen strictly on the merits.

In addition to seeking out relevant teaching experience, the defendants maintain that they favored candidates who were familiar with the District's curriculum or with the "whole language" program. As a result of her part-time and substitute work in the District, Bennett had had exposure to the District's curriculum. Not all the hired candidates could boast the same thing, however. Rquibi, for instance, was familiar neither with the District's curriculum or the whole language program. Similarly, Lenhart did not have experience with the District's curriculum, although she did have experience with whole language, which Bennett apparently did not have. That would have put the two candidates on equal footing, but Lenhart was still chosen over Bennett.

Setting forth a point-by-point comparison of the candidates, the defendants continue to insist that the hirees were clearly superior to Bennett. Yet it is hard to discern how the hired candidate stood out as so much more qualified than Bennett. For instance, Lenhart, as discussed, only had student teaching experience, while Bennett had years of special education experience in addition to regular education experience on a substitute and part-time basis. Lenhart had a background in reading and ESL, while Bennett had minored in English and was certified with an endorsement to teach, among other subjects, language arts. Lenhart had experience with whole language, computers, and regular class assessment, which Bennett did not have, but Bennett had experience with inclusion, which, unlike the whole language "requirement," was explicitly included in the job posting as a skill sought out by the school. In view of the evidence, a reasonable jury might disbelieve that the District honestly thought Bennett to be less competent on the merits.

The District not only contends that Bennett was rejected because she was less qualified than the hired individuals, it also claims that salary considerations factored into the hiring decision. Bennett had a master's degree and years of teaching experience. Thus, she commanded a higher salary than inexperienced candidates with bachelor's degrees. The District maintains that they had a strong hiring preference for less expensive teachers. There was no prohibition against hiring candidates with master's degrees, however. In fact, Rquibi was pursuing a master's degree and was a few credits shy of earning her advanced degree when she was offered the position at Weisbrook Elementary School. Other teachers in District 200 also had master's degrees. This evidence suggested, and the defendants concede, that Bennett's higher salary requirement did not disqualify her. The fact that hiring Bennett was more expensive does not seal the defendants' case because, in the end, the salary consideration proved not to be a decisive factor.

It is important to note that the question for the jury was whether the employer honestly believed its proffered reason for rejecting Bennett, not whether the employer was "mistaken or based its decision on bad policy, or even just plain stupidity." Essex, 111 F.3d at 1310. In most failure-to-hire/failure-to-promote or reduction-in-force cases, a fine line separates the two questions. See Christie, 785 F.2d at 587 ("A plaintiff cannot argue that the defendant showed bad judgment in deciding another employee had greater potential, but he can argue that the method used by the defendant showed that the defendant was not really trying to decide which employee had greater potential."). The verdict in the instant case, however, cannot be dismissed as the jury's attempt to second-guess the District's hiring decision. It is not that the jury disagreed with the criteria used by the District, but rather that the evidence convinced the finder

of fact that the criteria set forth by the District were not in fact relied on. In other words, because the evidence called into question the veracity of the explanations purportedly supporting the District's hiring decisions, the jury could reasonably infer that the District had discriminatory motives. See Wilson, 167 F.3d at 1121 ("When the sincerity of an employer's asserted reasons for [a challenged action] is cast into doubt, a factfinder may reasonably infer that unlawful discrimination was the true motivation: 'If the only reason an employer offers for firing an employee is a lie, the inference that the real reason was a forbidden one, . . . may be rationally drawn.'")

Bennett also put forth evidence which might further lead a rational jury to question the credibility of the defendants. Wright, the principal at Hubble Middle School explained that Bennet was not hired because all of her experience was in special education. Contrary to his written assertion, Bennett had taught regular education classes and had substituted for District 200. A Hubble document explicitly noted that Bennett had taught second grade regular education. Thus Wright was fully aware of Bennett's regular education background, his statement notwithstanding. A jury might interpret Wright's statement as harmless error. But an equally reasonable jury might see it as a blatant lie, a dishonest attempt to cover up discriminatory animus. Further suspicions might be aroused by the fact that the defendants, who purportedly valued relevant experience, ultimately hired a candidate with no full time teaching experience, only student-teaching experience.

Bennett also exposed the District's inconsistent actions. Jean Ford, the former principle at Weisbrook, refused to hire Bennett partly because Bennett had a child who was a student at the school. Ford saw the situation as problematic. However, both before and after Bennett's

rejection, teachers had been and were hired while their children attended Weisbrook. Ford claims that Bennett did not address the issue to her satisfaction. Despite Ford's explanation, the jury was entitled to draw inferences against the District from these circumstances. See Namenwirth v. Bd. of Regents of the University of Wisconsin System, 769 F.2d 1235, 1241 (7th Cir. 1985) ("[I]f the [employer's] explanation, however genuine or reasonable, were used to exclude only members of a protected class . . . then in the eyes of the law the explanation would be pretextual.")

In addition, one teacher-screening committee member at Franklin Middle School testified that the decision to deny Bennett the full time teaching position but to offer her a part time position in its stead was made in a single day. The principal of the school, in contrast, testified that Bennett was considered for the part-time job long after the full-time teacher was selected. This may not be a material fact in and of itself, but to the extent that it further compromises the perceived honesty of the defendants, it is relevant to this court's analysis. In sum, the District's inconsistent actions and statements undermined their credibility. See Collier v. Budd Co., 66 F.3d 886, 893 (7th Cir. 1995) ("If the employee offers specific evidence from which the finder of act may reasonably infer that the proffered reasons of not represent the truth, the case then turns on the credibility of the witnesses. . . . The credibility judgment is best left to the trier of fact.")

Admittedly, Bennett did not present a decisively strong case. The Seventh Circuit, however, has noted that "even a thin case may stand on our deferential review of a jury's verdict." Wichmann, 180 F.3d at 802 (citing Price v. Marshall Erdman & Assoc., 966 F.2d 320, 322 (7th Cir. 1992)). See also, e.g., Wilson, 167 F.3d at 1121 (emphasizing the importance of deferring to the trier of fact on credibility determinations); Spelman, 1995 WL 290392, at *2

(noting that the evidence presented in the case was not particularly strong, but nevertheless sufficient, particularly because the verdict rested on credibility judgments). Bennett put forth enough evidence to convince a reasonable jury that the District's proffered explanation had "no basis in fact, or if they [had] a basis in fact, . . . were not really factors motivating" the defendants. See Christie, 785 F.2d at 587. From this record, a reasonable jury could have found unpersuasive the District's reasons for concluding that the hirees were better qualified than Bennett. See e.g., Wichmann, 180 F.3d at 802-03 (upholding verdict where "a rational jury might indeed have accepted the [employer's] version but it was not irrational of this jury to reject it, and that by itself could justify the verdict for [the plaintiff]"). The doubts cast on the defendant's proffered reasons and the defendants' overall credibility permit a finding of intentional discrimination. Consequently, the defendants' motion for judgment as a matter of law is denied.

Likewise, the defendants' motion for a new trial is denied, although a remittitur will be granted. The defendants' request for a new trial based on insufficient evidence is denied for the same reasons articulated above. See Mathur, 207 F.3d at 944 (affirming denial of new trial where the "verdict was supported by sufficient–albeit not overwhelming– evidence and we find no abuse of discretion"). The defendants raise additional points that merit further discussion.

First, the defendants contend that the court erred when it declined to give the business judgment instruction. The court's analysis is limited to determining whether the jury instructions, "as a whole, were sufficient to inform the jury correctly of the applicable law." Wichmann, 180 F.3d at 804 (quoting Patel v. Gayes, 984 F.2d 214, 218-219 (7th Cir. 1993)). An incorrect jury instruction warrants a new trial if "considering all the instructions, the evidence

and the arguments that the jury hears, it appears that the jury was misled or did not have a sufficient understanding of the issues and its duty to determine them." Gruca v. Alpha Therapeutic Corp., 51 F.3d 638, 644 (7th Cir. 1995). The complaining party, in seeking a new trial, must demonstrate that the jury's confusion resulted in prejudice. Id.; Wichmann, 180 F.3d at 804.

The defendants are correct in asserting that the law does not prohibit incompetence, stupidity, or general injustice by employers, but only discrimination on a prohibited basis like race. See Wichmann, 180 F.3d at 805. "Our civil justice system, however, is based on the idea that 'the jury is well-equipped to evaluate the evidence and use its good common sense to come to a reasoned decision.' A judge need not deliver instructions describing all valid legal principles." Id. (internal citations omitted). The instructions in this case did not invite the jury to impermissibly second-guess the District's hiring decision. Rather, the jury was told that Bennett was charged with proving that she was discriminated against because of her race. The jury instructions were accurate and not misleading. This court had no further obligation to "take any extraordinary measures in instructing the jury to protect employers." Id.

Second, the defendants object to certain statements made during the trial. During principal Jean Ford's video-taped testimony, she was asked whether Weisbrook had any African American full time teachers on staff. Defense counsel objected to the question. Initially, the court sustained the objection but then reversed its ruling. Ford proceeded to testify that there were no full-time African American teachers on her staff during her tenure at Weisbrook. During closing arguments, Bennett's counsel depicted Bennett as one who would "break the color barrier." The defendants objected to this comment and the court sustained the objection.

The defendants challenge the admission of Ford's testimony regarding the racial composition of the teachers at Weisbrook as well as the cited statement made by Bennett's counsel during closing arguments. A party seeking a new trial on the basis of evidentiary errors faces a "heavy burden." Van Stan v. Fancy Colours & Co., 125 F.3d 563, 570 (7th Cir. 1997). To justify a new trial, an evidentiary error must affect a litigant's substantial rights; that is, a substantial chance must exist that such errors affected the outcome of the trial. Id. Similarly, improper remarks made during a closing argument warrant reversal of the judgment only if the remarks "influenced the jury in such a way that substantial prejudice resulted to the opposing party." Gruca, 51 F.3d at 644. Statements made during closing arguments must be "plainly unwarranted and clearly injurious to constitute reversible error." Id.

The defendants argue that not only was the admission of Ford's statement improper, but that "the court's reversal [of its original sustaining of the objection] insured that the jury would give the testimony undue weight." Def. Rev. Memo. at 13. They also contend that Bennett's counsel's statements were inflammatory and prejudicial. Neither of the contested statements, however, were substantially prejudicial. Ford's testimony and Bennett's counsel's comment, even when taken together, did not misdirect the jury. These statements did not carry sufficient force to account for the verdict; it cannot be said that these two remarks affected the outcome of the trial.

Lastly, the defendants seek a remittitur. They argue that the amount of backpay and compensatory damages awarded to Bennett were excessive and against the weight of the evidence. Unless the amount of the jury award is "monstrously excessive" or bears no rational connection to the evidence, this court will not disturb the jury's damage calculation. Cygnar v.

City of Chicago, 865 F.2d 827, 847 (7th Cir. 1989). See also Hamilton v. Svatik, 779 F.2d 383, 388 (7th Cir. 1985) ("A jury's damage award should not be disturbed so long as it is not 'so large as to shock the conscience of the court.'") This court will also consider whether the damage award in this case is comparable to awards in similar cases. EEOC v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1285 (7th Cir. 1995). The court must accord substantial deference to a jury's determination of compensatory damages. Ramsey v. American Air Filter Co., Inc., 772 F.2d 1303, 1313 (7th Cir. 1985). "Underlying this deference to a jury's assessment of damages is the acknowledgment that the actual measure of damages is an exercise of fact-finding." Cygnar, 865 F.2d at 847. At the same time, the court must also ensure that the award is supported by competent evidence. Ramsey, 772 F.3d at 1313. A compensatory damage award must bear a reasonable relation to the actual injury sustained; it may not be punitive in nature. Cygnar, 865 F.2d at 848.

The jury awarded Bennett $60,273 for lost earnings, and an additional $240,000 for emotional distress and humiliation. In accordance with the teachers' salary scale set forth in the collective bargaining agreement, Bennett would have earned $72,531 had she been a full time teacher in District 200 during the 1995-96 and 1996-97 school years.[2] Bennett earned $12,000 while employed as a part-time teacher with the District during the 1995-96 school year. During the 1996-97 school year, Bennet earned $42,800 as a teacher in the Maywood School District. In arriving at the $60,000 backpay figure, it appears that the jury awarded Bennett the amount she would have earned had she been employed full-time by the District less the amount she received

---

[2] Bennett's entitlement to backpay ceased as of June 1997 when she moved away from the District to Texas.

-13-

for her part-time work. The jury's approach was correct but incomplete. The jury should have also subtracted the amount Bennett earned from her job at Maywood. Thus, the proper backpay award would equal $29,731.

The defendants argue that Bennett's backpay award should be further reduced to account for her alleged failure to mitigate damages. Bennett rejected offers for employment within the District as an instructional aide and a lunch room attendant during the 1995-96 school year. These positions, however, were not comparable to the full-time teaching position sought by Bennett. Bennett, equipped with a master's degree and years of teaching experience, was not obligated to accept these positions for which she was most certainly highly overqualified. See Hutchinson v. Amateur Elect. Supply, Inc., 42 F.3d 1037, 1044 (7th Cir. 1994) (defendant's burden to show that plaintiff might have found comparable work by exercising reasonable diligence). Thus, Bennett's backpay award will not be reduced any further.

Bennett's compensatory award is attributable not to any attributed economic harm but rather to such "intangible" harms as humiliation, embarrassment, and emotional distress. The Seventh Circuit's review of cases in which the Plaintiffs were wrongfully terminated shows that the awards for emotional distress range "from a low of $500 to a high of over $50,000." Webb v. City of Chester, 813 F.2d 824, 836 (7th Cir. 1987) (cited in Cygnar, 865 F.2d at 848). See AIC, 55 F.3d at 1285-86 (upholding $50,000 award for emotional damages where employee's discriminatory termination cut off "one of the major defining aspects of his life"); Avitia v. Metropolitan Club of Chicago, Inc., 49 F.3d 1219, 1230 (7th Cir. 1995) (reducing nonpecuniary award from $21,000 to $10,500 where employee was suspended and terminated but found replacement employment within three months and there was no showing of "protracted

bitterness"); Fleming v. County of Kane, 898 F.2d 553, 562 (7th Cir. 1990) ($40,000 award for emotional distress where employee suffered embarrassment and humiliation from retaliatory firing); Cygnar, 865 F.2d at 848 (reducing award of $55,000 to $15,000 in political discrimination case where plaintiff transferred with no loss of position); Ramsey, 772 F.2d at 1313 (compensatory award reduced to $35,000 where plaintiff suffered humiliation from racial harassment). See also Williams v. Pharmacia, Inc., 956 F. Supp. 1457, 1472-74 (N.D. Ind. 1996) (collecting cases); Schmizzi v. Illinois Farmers Insur. Co., 928 F. Supp. 760, 777-80 (N.D. Ind. 1996).

To justify a significant departure from the range of awards in similar cases, Bennett must demonstrate that she suffered from correspondingly more severe or sustained emotional harm. Bennett testified that the District's rejection affected her self-esteem and caused her stress. She added that her distress was manifest in physical ailments; she suffered from headaches, vomiting, and abdominal pain as a result of the District's actions. Bennett's emotional state was comparable that described in the above cited cases. As such, a compensatory award of $240,000 is "monstrously excessive." In light of the case law, the court finds that an award of $45,000 is the outermost award that is supported by the record.

## III. Conclusion

For the foregoing reasons, the defendants' motion for judgment as a matter of law is denied. The defendants' motion for a new trial is denied; however, the defendants' request for a remittitur is granted. Bennett's backpay award is reduced to $29,731.00 and her compensatory award is reduced to $45,000.00.

Enter:

_David H. Coar_

David H. Coar

United States District Judge

Dated: December 15, 2000